IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

                    Respondent,

     v.

DAVID BEST
              Petitioner.

Criminal No. 13-0195

ELECTRONICALLY FILED


**MEMORANDUM OPINION ON MOTION TO VACATE SENTENCE**


**I. Introduction**

Before this Court is the counseled Motion to Vacate, Set Aside or Correct Sentence under Title 28 United States Code Section 2255, by Petitioner, David Best (hereinafter "Petitioner" or "Best"). Doc. 480. Best was the leader of a large-scale prescription pain pill ring centered in Beaver and Allegheny Counties. Following a lengthy jury trial, Best was convicted on all but one count of the 11 count superseding indictment.[1] Doc. 96. After careful consideration of Petitioner's Motion and Brief in Support (doc. 480), the Government's Response, (doc. 489), the Petitioner's Reply (doc. 490), and the entire extensive record in the case, including the trial transcript of this matter and the sentencing proceedings over which this Court presided, the Court will DENY Petitioner's Motion to Vacate, Set Aside or Correct Sentence without a hearing and without discovery.

**II. Factual Background/Procedural History**

Petitioner was charged, along with several others, with a 16-count superseding

---

[1] The superseding indictment contained 16 counts in all, and Best was charged with 11 counts.

1

indictment charging a drug conspiracy involving possession with intent to distribute oxycodone and Opana, burglary of a pharmacy, and brandishment of a firearm in furtherance of a drug trafficking crime, among other serious crimes. The trial testimony established that Best was the leader of this drug conspiracy network, and all of the other co-defendants eventually pled guilty and many testified against him in the trial of this matter.

Best graduated from Ambridge High School in 2004, with high academic rankings as well as leadership positions, and he received a Bachelor of Science degree from Waynesburg University in 2009. From 2010 to 2011, Best was a graduate student at Palmer School of Chiropractic in Iowa and left the school for "health reasons," after being placed on "warning probation." Doc. 430 at 23. During his time in Iowa, he had a history of theft and possession of controlled substances.

Best moved back to the Sewickley area in 2011 at approximately 24 years of age and lived with his parents (his father is an airline pilot and mother also has a professional career). Shortly thereafter, he became the leader of a conspiracy to sell Oxycodone, Opana and other drugs. As part of that conspiracy, he sought out Jade Gagianas, a woman he had known in high school. Once he determined that she worked at a pharmacy, he promised to marry her and have children with her. The trial testimony established that Best used her as a pawn in his scheme to steal prescriptions, which he both consumed and sold, and in all she provided Best more than 40 prescriptions all written for large quantities of Opana and Oxycodone. Best also brazenly burglarized the MedFast pharmacy where Gagianas worked on three occasions, and stole large quantities of drugs during these burglaries. He had others who worked as "runners," passing forged prescriptions, and he bought pills for sale and use from Tony Villani.

In addition to all of this conduct, the testimony at trial established that Best further set up

a "sting" operation after he determined that Ricky Dlubak, a friend/acquaintance, had broken into the Best residence and stolen between $9,000.00 and $10,000.00 in drug proceeds, as well as Opana pills. Best obtained a revolver and lured Dlubak back to his home, while he and a neighbor, who was also a drug customer of Best's, laid in wait. Chris Cerny, who knew nothing of Dlubak's plan to again steal from Best, drove Dlubak to Best's home and waited in the car, while Dlubak went inside the Best home. Best came out to Cerny's car, and pointed the gun in his face and ordered him into the house. Best found Dlubak hiding in a closet and threatened to shoot him. Cerny escaped and called 9-1-1, and when the police arrived at Best's home, they found Dlubak duct-taped inside.

The trial testimony further established that the DEA made controlled purchases of three 40-milligram Opana pills from Best on April 18, 2013, and seven 30-milligram oxycodone pills from Best on April 30, 2013.

Best was then charged with a federal indictment and later a 11-count superseding indictment, including causing the overdose death of Christopher Radford, a charge for which he was acquitted at trial.

To further recount the procedural history of this case, on September 6, 2013, Best plead not guilty to each count of the superseding indictment. Best was represented by retained counsel - - the well respected and prominent criminal defense attorney, Stanton D. Levenson. The jury trial of this matter lasted from March 31, 2014 to April 10, 2014, total of 8 trial days and 2 days of deliberation). Doc 299, and Doc. 320. Upon conclusion of the trial, Best was convicted by a jury of the following crimes:

One count (1s) of conspiracy to distribute and possession with intent to distribute oxycodone and Opana in violation of Title 21 U.S.C. Section 846.

Six counts (Counts 2s, 3s, 9s, 10s, 11s and 16s) for possession with intent to distribute and/or distribution of Opana and oxycodone, in violation of Title 21 U.S.C. Section 841(a)(1) and (b)(1)(C).

One count (Count 5s) for possession and brandishment of a firearm in furtherance of a drug trafficking crime, in violation of Title 18 U.S.C. Section 924(c)(1)(A)(i) and (ii).

Three counts (Counts 6s, 7s and 8s) for burglary of a pharmacy, in violation of Title 18 U.S.C. Section 2118(b) and 2.

Best, however, was acquitted of one count (Count 4s) of possession with intent to distribute and distribution of Opana and oxycodone, schedule II controlled substances under Title 21 U.S.C. Section 841(a)(1) and (b)(1)(C).

Best testified at the trial of this matter, as well as numerous other co-defendants. During Best's testimony, he admitted to selling drugs and conspiring with others to do so, starting in 2011; further, he admitted that he had Gagianas steal blank prescriptions.

Following the sentencing proceedings, Best was sentenced to 288 months imprisonment, which represented a downward variance of the Sentencing Guideline Range of 346 to 411 months imprisonment, and he filed a timely notice of appeal from the judgment of conviction on December 18, 2014. Doc. 441.

On December 23, 2014, the United States Court of Appeals docketed Best's appeal, and on February 12, 2016, Best's judgment of conviction was affirmed by the United States Court of Appeals for the Third Circuit, in an unpublished opinion. *United States v. Best*, 639 Fed. Appx. 848 (3d Cir. 2016).

On February 26, 2016, Best filed a Petition for Rehearing and Rehearing *En Banc*, which was denied. Then, on June 21, 2016, Best filed a Petition for Writ of Certiorari with the

Supreme Court of the United States, which was denied on October 3, 2016. Therefore, the judgment of conviction became final less than one year before the instant Motion was filed (on August 22, 2017).

Other than the instant motion, no other petition or appeal is now pending in any court. Regardless, the claims, which are primarily in the nature of ineffective assistance of counsel, may be brought in a collateral proceeding pursuant to Title 28 U.S.C. Section 2255, whether or not the petitioner could have raised the claims on direct appeal. *Massaro v. United States*, 123 S.Ct. 1690, 1694 (2003).

### III.  Grounds for Relief

Petitioner, who is now represented by Laurel Brandstetter, Esquire,[2] and is in custody under a federal sentence of 288 months imprisonment on the judgment of conviction, presents the following seven (7) grounds for relief.[3]  His claims may be best grouped into two categories: (1) allegations that his constitutional right under the Sixth Amendment to effective assistance of counsel (Grounds One, Two, Three, Five, Six and Seven) was violated; and, (2) allegations that his Fourteenth Amendment right to due process was violated (Ground Four).

Best seeks numerous avenues of relief.  He argues for discovery, for a hearing, for this Court to vacate his sentence, and for a new trial.  The Court finds that the record conclusively shows that he is entitled to none of the relief requested, and addresses the following arguments by Best.

Ground One:  Best was deprived of trial counsel and trial counsel rendered ineffective assistance by engaging in an actual conflict of interest by contemporaneously representing co-

---

[2] Best was represented by:  Mackenzie Fostar Grills, Esquire, at his initial appearance; by Stanton D. Levenson, Esquire, at the arraignment and plea, through the trial and sentencing, and on appeal, and Stephen R. LaCheen, Esquire, on appeal.
[3] Although Petitioner's Motion alleges eight (8) grounds for relief, there are actually seven (7) grounds presented.

defendant, Ryan Raithel.

Ground Two:  Trial counsel was ineffective by failing to investigate, cross examine and by agreeing to stipulate to the value and amount of controlled substances associated with the diversion of controlled substances and burglaries of MedFast pharmacy.

Ground Three:  Trial counsel was ineffective by failing to cross-examine and impeach government witnesses called to testify in connection with the charge of brandishment of a firearm in furtherance of a drug trafficking crime.

Ground Four (stated as Ground Five in brief):  Best was denied due process because the prosecution failed to fully and accurately disclose the nature of the cooperation and benefit received by Dean Ciccone and Matthew Moody.

Ground Five (stated as Ground Six in brief):  Trial counsel was ineffective by sleeping during "significant portions" of Best's trial.

Ground Six (stated as Ground Seven in brief): Trial counsel was ineffective by failing to respond or object to the introduction of other-acts evidence under Federal Rule of Evidence 404(b).

Ground Seven (stated as Ground Eight in brief):  Appellate counsel was ineffective by failing to raise several claims during the direct appeal and trial counsel rendered ineffective assistance by not securing acceptance of responsibility credit for Best.

## IV.  Standard of Review

28 U.S.C. Section 2255 provides, in relevant part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or

otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Whether to conduct a hearing is within the sound discretion of the District Court. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008); *United States v. Day*, 969 F.2d 39, 41 (3d Cir. 1992)(*quoting Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989), *cert. denied* 500 U.S. 954 (1991)). In exercising that discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Day,* 969 F.2d at 41-42 (citation omitted). *See also* Rules Governing Section 2255 Proceedings, Rules 4 and 8. The Court must view the factual allegations in the light most favorable to the Petitioner. *Government of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 574 (3d Cir. 1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted). However, a Section 2255 Motion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle Petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005)(citations omitted).

In order for Petitioner to establish counsel was ineffective, he has the burden to show counsel's performance (i) was in fact deficient and (ii) that the deficient performance so prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the

sentence]; i.e., Petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984). Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* at 689-90 (citation omitted). On the other hand, the mere fact that counsel's challenged performance or tactic can be called "strategic" in the sense it was deliberate, does not answer the dispositive question of whether that decision or tactic fell within the wide range of "reasonable professional assistance." *Davidson v. United States,* 951 F.Supp. 555, 558 (W.D.Pa. 1996), *quoting Government of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1431-32 (3d Cir.), *cert. denied* 117 S.Ct. 538 (1996). "Reasonable trial strategy must, by definition, be reasonable." *Davidson,* 951 F.Supp. at 558.

Counsel's strategy must be judged by a standard of reasonableness based on the prevailing norms of the legal profession. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (*Strickland* standards for claims of ineffective assistance of counsel unchanged under Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214). Ineffective assistance of counsel will not be found simply because, with the assistance of hindsight, the reviewing court disagrees with counsel's strategy. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

In the context of a Section 2255 petition for collateral relief, the United States Court of Appeals for the Third Circuit has offered the following guidance:

> The . . . test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all of

appellant's nonfrivolous factual claims.  This step requires that we review
whether the district court properly found certain allegations frivolous. Second,
we must determine whether, on the existing record, those claims that are
nonfrivolous conclusively fail to show ineffective assistance of counsel.  To
evaluate claims under this second step, we must turn to both prongs of the
*Strickland* test.  If a nonfrivolous claim clearly fails to demonstrate either
deficiency of counsel's performance or prejudice to the defendant, then the
claim does not merit a hearing.  If, on the other hand, a claim, when taken as
true and evaluated in light of the existing record, states a colorable claim for
relief under *Strickland*, then further factual development in the form of a
hearing is required.  That is, if a nonfrivolous claim does not conclusively fail
either prong of the *Strickland* test, then a hearing must be held.  Thus, the
district court must employ the *Strickland* analysis at least once, and may have
to employ it twice--first, as a threshold analysis of all claims on a limited
record, and then again only on colorable claims after full factual development
of those claims.

*United States v. Dawson,* 857 F.2d 923, 927-28 (3d Cir. 1988).

Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance
when his performance 'f[alls] below an objective standard of reasonableness,' given the
particular circumstances of the case at hand."  *Hodge v. U.S.,* 554 F.3d 372, 379 (3d Cir.
2009)(*quoting Strickland*, 466 U.S. at 688).  As in any other ineffective assistance of counsel
context, "[a] reasonable probability is a probability sufficient to undermine confidence in the
outcome."  *Strickland*, 466 U.S. at 694.

The Court must employ a highly deferential standard, which entails "a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance."  *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007)(*quoting Strickland*,
466 U.S. at 689).  To rebut this presumption, a Petitioner "must show either that: (1) the
suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions
could never be considered part of a sound strategy."  *Thomas v. Varner*, 428 F.3d 491, 499 (3d
Cir. 2005).

Under the second prong (i.e., the prejudice prong), Petitioner must show that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694).

## V.    Factual Summary by United States Court of Appeals for the Third Circuit

The following is a factual summary of this case, judging the facts in the light most favorable to the Government, as set forth by the United States Court of Appeals for the Third Circuit in its Memorandum Opinion denying Best's direct appeal.[4]

From July 2011 until May 2013, Best illegally sold "[t]housands" of prescription pain pills, primarily oxycodone and oxymorphone (Opana). Supp. App. III 1379. Best illegally obtained many of these pills from his girlfriend, Jade Gagianas, a pharmacy technician. Gagianas stole bottles of oxycodone and Opana from a pharmacy where she worked. For each stolen bottle, Best paid Gagianas around fifty to one hundred dollars. Gagianas stole approximately eleven bottles (eleven hundred pills) of oxycodone and nine bottles (nine hundred tablets) of Opana. Discovered by her employer, Gagianas was allowed to resign.

Gagianas soon obtained another pharmacy job. There, the pills were secure, so Gagianas stole blank prescriptions instead. Gagianas then forged the prescriptions by filling in doctors' names and DEA numbers, information she accessed at work. Gagianas also filled in fraudulent patient information, using the names of drug addicts, which Best provided to her. Best disseminated the prescriptions to the fraudulent "patients," who filled the prescriptions at pharmacies for Best. The Government ultimately recovered approximately forty of these prescriptions.

In addition to the pills Best obtained through Gagianas, Best burglarized, on three separate occasions, the pharmacy where Gagianas originally worked. Best also bought pills from other drug dealers.

During the course of his drug trafficking, Best also obtained a gun. The precipitating event that led to Best obtaining a gun was a burglary of Best's house on Memorial Day weekend of 2012. The burglar, Richard Dlubak, stole thousands of dollars in drug proceeds and a few Opana pills. Best did not call

---

[4] The Court provides these factual findings for a complete record, but also recognizes that the standard of review is different on direct appeal because the facts are viewed in the light most favorable to the verdict winner.

the police. Instead, Best borrowed a gun. On June 20, 2012, Best enticed Dlubak to again burglarize Best's house. Specifically, Best told Dlubak that there were thousands of dollars and two hundred pills stored in the house. After Dlubak took the bait and returned, Best confronted him, brandished the gun and tied up Dlubak with duct tape. The police interrupted the incident and later recovered the gun used by Best. Although Best denied it to the police, he was actively dealing drugs and disseminating fraudulent prescriptions at that time. Best was arrested for the Dlubak incident, but was released from jail after one night; the charges were later dismissed.

In September 2012, Gagianas broke off her relationship with Best, who continued dealing drugs. In April 2013, the Drug Enforcement Administration (DEA) conducted two "controlled buy[s]" from Best. Supp. App. I 178. On May 1, 2013, the DEA executed a search warrant on Best's house and recovered over two thousand dollars and thirty-two oxycodone pills. Thereafter, Best was arrested on the instant charges.

This case was tried before a jury. At trial, Best testified and confessed to almost all the charges. On the stand, Best disputed only two counts: a count of death after consumption, for which he was acquitted (21 U.S.C. § 841(a)(1), (b)(1)(c)), and brandishing a firearm in furtherance of drug trafficking, for which he was convicted (18 U.S.C. § 924(c)(1)(A)(i)). Best was convicted of all remaining charges.

Doc. 470-2 at 2-4.

## VI. Discussion

Best's seven grounds for relief will be discussed *seriatim.*

**Ground One: Counsel was not ineffective for failing to inform Best of his simultaneous representation of co-defendant Ryan Raithel.**

Best contends that he is entitled to a hearing and a new trial because trial counsel did not properly inform his that he was simultaneously representing co-defendant Ryan Raithel on a charge in state court, a co-defendant who testified on behalf of the Government at Best's trial. Taking Best's factual allegations at face value, which the Court is required to do at this juncture, his claim in this regard still falters because he cannot establish an actual conflict of interest, which is required to establish a constitutional violation of this nature.

The Sixth Amendment guarantees a criminal defendant to his counsel's undivided loyalty, free of conflicts of interests. *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir. 1998). When analyzing an attorney's conflict of interest pursuant to *Strickland*, prejudice is presumed where an attorney's actual conflict of interest tainted counsel's performance. *Id.*; *see also United States v. Gambino*, 864 F. 2d 1064, 1070 (3d Cir. 1988). In *Cuyler v. Sullivan*, the Supreme Court of the United States explained that multiple representations merely establishes, "the possibility of conflict[, which] is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

Therefore, in order to demonstrate a constitutional violation under the Sixth Amendment, Best is required to establish that counsel was ineffective by possessing an "actual conflict." An actual conflict of interest exists, and prejudice is presumed, when, "during the course of representation, the defendant's interests diverge with respect to a material factual or legal issue or to a course of action such that the attorney finds himself in the untenable position of serving two clients with incompatible needs." *Gambino*, 864 F.3d at 1070. In other words, there must be "some lapse in representation contrary to the defendant's interests," by some act or omission on the part of counsel. *Id.* "Actual conflict is also more easily established when the attorney has taken a positive step benefitting another client than when the attorney was passive and failed to act on behalf of the petitioner." *Duncan v. Morton*, 256 F.3d 189, 197 (3d Cir. 2001).

Where the alleged conflict is based on an attorney's failure to act, the petitioner must demonstrate two things: (1) "that some plausible alternative defense strategy or tactic might have been pursued;" and (2) "that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Gambino*, at 1070.

Best states that trial counsel's loyalties in the present case were divided as evidenced by his cross-examination of his client, Ryan Raithel. By way of background, Ryan Raithel was charged with two counts in the superseding indictment of conspiring to distribute oxycodone and oxymorphone with Best, Matthew Moody, Jade Gagianas, Katie Adams and Drew Brown, from December of 2011 to May of 2013 (1s) and distribution of heroin on August 10, 2012 (12s). Doc. 151. Although charged in the same superseding indictment, the August 2012 heroin sale was unrelated to any of the charges in Best's trial, and it arose from a controlled buy of a bundle of heroin for ninety dollars at a Wal-Mart in Cranberry Township, Pennsylvania. David Chontos, Esquire, represented Raithel in the federal case. The heroin sale charged in Count Twelve was the basis for the state charges of heroin trafficking charged in Butler County in 2013, before the federal case was filed. Trial counsel Levenson represented Raithel in the Butler County case, and the state court charges were dismissed one day after Raithel pled guilty in the federal case (December 5, 2013). This occurred several months before the commencement of Best's trial.[5]

Contrary to Best's position, that trial counsel's dual representation evidences an actual conflict so that prejudice is presumed, the Court agrees with the Government that trial counsel's representation of both Best and Raithel presented only a modest risk of conflict. First, trial counsel did not represent Raithel in the federal case, and Raithel's state heroin case was unrelated to any of the charges against Best. Second, Raithel's state case was no longer pending during the trial of Best. Third, Raithel's DUI and probation violation also had no relationship to Best's charges.

---

[5] Trial counsel also represented Raithel in a Driving Under the Influence case for which he was sentenced in December of 2013, and in a parole violation hearing held on April 15, 2014, in a separate Allegheny County case from 2003. Doc. 489-1.

Nonetheless, Best claims that three actions/omissions form the basis for an actual conflict, such that prejudice need not be proven: (1) that trial counsel did not aggressively cross-examine Raithel during the trial of this matter; (2) that trial counsel referred favorably to Raithel during his closing argument; and (3) that trial counsel entered into stipulations that prevented witnesses from testifying negatively against Raithel in live court.

However, as the Government posits, and this Court agrees, "conspiracy – the only charge to which Raithel testified – is not a zero-sum equation.  Relative culpability is not a factor in the single question the jury was tasked with answering: whether Best engaged in a conspiracy." Doc. 489 at p. 8.  In other words, there is no possibility that making Raithel look worse could have resulted in a not guilty verdict for Best on the drug conspiracy charge.  And, in any event, during Best's own testimony, he admitted that he participated in a drug trafficking conspiracy when he was asked "Ryan Raithel provided you with runners, correct?" to which he answered "Yes, he did.  He reaffirmed that when asked: "[H]e wasn't lying about that," and he answered "Correct.  No, he was not." Doc. 437 at p. 202-203.

Therefore, the actions that Best suggests trial counsel should have taken, and failed to take, could not have plausibly helped his case.  Assuming for sake of argument that attorney Levenson more vigorously cross-examined Raithel, it would have been repetitive because the Government explored Raithel's role in recruiting people to fill fraudulent prescriptions and Raithel admitted that he was a drug dealer, that he obtained prescriptions from Best, and organized others to fill the prescriptions.  Raithel explained that he and Best split the proceeds of the pill sales in half.  Instead, trial counsel had a strategy in an attempt to engender sympathy for Best by portraying him as an addict, like Raithel, rather than a person of inherent bad

character.[6]  If trial counsel had attempted to malign Raithel, it likely would have undermined his trial strategy and would have left him in the same position either way, since there is no way to lessen culpability on a conspiracy charge by disparaging Best's co-defendant, while he admitted that co-defendant was telling the truth about their respective roles in the drug conspiracy.

On the last point which Best alleges demonstrates an actual conflict, that trial counsel was misguided in his agreement to stipulate to every Government witness who would offer evidence of Raithel's role in the drug conspiracy, again this argument does not demonstrate an actual conflict.  Trial counsel neither harmed Best's interests nor did he avoid damaging Raithel by stipulating to witness testimony.  All four witnesses would have testified that Raithel gave them fraudulent prescriptions to fill, and another witness, Janna Gahagan, would have testified not only about Raithel's role in the conspiracy, but also that she saw Raithel give half of the pills from her prescription to Best.  Doc. 274 at pgs. 49-55, 56-59.  Any live testimony about Raithel's role in the conspiracy would have likely demonstrated the scope of the conspiracy, further highlighting Best's role in it.  As the Government concludes, and this Court echoes, "[a]n insistence that these witnesses testify in court would not have significantly damaged Raithel, may have damaged Best, and is simply not a viable alternative strategy that establishes an actual conflict."  Doc. 489 at p. 11.  Simply put, trial counsel's actions do not demonstrate an actual conflict and Best has failed to demonstrate prejudice.  For these reasons, no evidentiary hearing is required.

---

[6] This strategy further explains why trial counsel made references to Raithel in sympathetic terms.  Trial counsel had an obvious strategy of establishing both Best and Raithel as helpless addicts.  See Doc. 433 at 65-66.

**Ground Two:  Trial Counsel was not ineffective for stipulating to the quantity of drugs that Best stole from the Medfast Pharmacy because that quantity did not affect his conviction or sentence.**

Best next contends that his advisory guidelines sentence might have been reduced by two levels, from a 32 to a 30, if trial counsel had not stipulated to the drug quantities that Best stole in the three pharmacy robberies.  Best then asks for discovery "on the business operations of MedFast pharmacy."  What Best does not do is to supply any information, other than by his own affidavit that he did not obtain any drugs from the first of the robberies.  In Best's affidavit, he makes vague allegations that the pharmacy employees or owners may have lied on other occasions about other information.

As explained above, in order for Best to sustain his burden on an ineffective assistance of counsel claim, he must show that trial counsel's performance was objectively unreasonable, and that he was prejudiced as a result of this deficient performance.  *Strickland*, 466 U.S. at 687.

The Presentence Investigation Report calculated the quantity of drugs from four sources, (1) the drugs that Gagianas stole and gave to Best; (2) the drugs Best stole during the three burglaries of Medfast; (3) the drugs Best obtained through forged prescriptions: and (4) the drugs Best obtained from Tony Villani.  PSR at Paragraphs 26-30.  The PSR calculated a base offense level of 32, on the basis that Best was responsible for the equivalent of between 3,000 and 10,000 kilograms (of marijuana), and held him responsible for the equivalent of between 6,883.08 and 7883.08 kilograms (of marijuana).[7]  The evidence at trial handily established that Best's responsibility equaled a 3,000 to 10,000 kilograms drug equivalency, irrespective of whether the pharmacy's calculations were accurate.

---

[7] The United States Sentencing Guidelines employ drug equivalency tables to determine the quantity of controlled substances for which a defendant is responsible.  *See* U.S.S.G Section 2D1.1.

The total equivalent quantity of marijuana derived from the forged prescriptions and the drugs that Gagianas stole for Best is 1,364.43, and combining this amount with the ample other trial evidence regarding the pills obtained from the burglaries, even halving the number of pills stolen from the first two burglaries, and ignoring results in a marijuana-equivalency, results in 1,050.74, yielding 2,415.17 kilograms. Gagianas testified credibly that she stole "whole bottles at a time" of 30- and 40- milligram Opana and Oxycodone pills. Doc. 433 at p. 13. Halving the number reported by the pharmacy, that results in a marijuana equivalency of 666.75 kilograms, for a total of 3,081.92, over the 3,000 threshold.

Moreover, the PSR calculated that Villani provided Best with between 5,000 and 10,000 30-milligram oxycodone pills, and although Best challenged that calculation, the Court ultimately did not find that the PSR's calculations were flawed in this regard. Doc. 429 at 13. This evidence has broad support in the record, including cellular phone records between Villani and Best showing that Best called Villani 523 times in a seven-month period in 2012, and 60 times between April and May of 2013. Further, Best admitted that Villani was his main source of supply and that he purchased from him several times per month. Other witnesses including Andrew Brown, Wesley Weaver, Carlos Martinez and Kate Adams stated that Best would purchase between 50 to 300 pills from Villani. Overall, Best admitted that he sold "thousands," of pills between 2011 and 2013; therefore, even discounting pharmacy estimates, the Government handily met its burden to prove that Best was responsible for over 3,000 kilograms of marijuana equivalency by a preponderance of the evidence. *United States v. Grier*, 475 F.3d 556, 585 (3d Cir. 2007).

Best's vague assertions regarding pharmacy inaccuracies and generalized impeachment allegations, even assuming, as he states, that he did not know about the stipulations prior to trial,

he was aware of them at sentencing and did nothing to attempt to correct the record in this regard.  Any correction of the record with regard to the stipulations would not have affected the Guidelines calculations since the Government still easily established the 3,000 kilogram drug equivalency through other trial evidence.  Accordingly, Best has failed to demonstrate both that his counsel's tactics were objectively unreasonable and that he was prejudiced by these trial tactics in that the outcome of the trial or the sentencing proceeding would have been different.

**Ground Three:  Counsel was not ineffective for not subjecting Dlubak to cross-examination on a theft conviction, a marijuana possession, or prior inconsistent statements.**

Ricky Dlubak provided testimony as to Count Five, which charged Best with possessing and brandishing a firearm on June 20, 2012.  Dlubak testified that Best held a revolver in his hand and clicked it to scare Dlubak into thinking that it was loaded.  Doc. 434 at pgs. 161, 176, 180.  Best did not dispute Dlubak's testimony when asked whether he had a gun and pointed it at Chris Cerny and Ricky Dlubak.  Cerny further corroborated this testimony.

Best now contends that trial counsel was ineffective in failing to impeach Dlubak regarding a prior theft conviction, marijuana possession and prior inconsistent statements.  First of all, during direct examination, Dlubak testified that he had been convicted of possession with intent to distribute drugs, retail theft, DUI and that he smoked marijuana on a daily basis.  Doc. 434 at pgs. 167-68.  Dlubak further admitted to stealing money from Best and to being "a thief." Id. at p. 169.

Second, on cross-examination, defense counsel questioned Dlubak regarding his daily marijuana use, cocaine dealing and retail theft.  Given all of this impeachment testimony, had defense counsel questioned Dlubak regarding another retail theft, there is no evidence that it

would have any demonstrable effect on his credibility before the jury. Not only that, but Cerny and Best himself corroborated Dlubak's testimony.

Moreover, as for Best's contention that the DEA agreed not to prosecute Dlubak for marijuana possession in exchange for his testimony against Best, the report cited in Best's motion states that the DEA told Dlubak they did not seek to prosecute him for a small user quantity of marijuana. Finally, any alleged inconsistent statements were immaterial and would not have had any impact on whether the jury believed that Best was guilty of the brandishment charges.

Simply put, both the Government and the Defense established that Dlubak was a damaged witness who was on drugs, and had prior arrests, including for hitting a person who he did not know; therefore, the addition of testimony regarding one or two more arrests for impeachment value would have had little, if any, effect on the jury's assessment of his credibility.

Best has failed to demonstrate an error by trial counsel that could have prejudiced him, and therefore, his argument fails. He is not entitled to a hearing or discovery thereon.

**Ground Four (stated as Ground Five in brief): Best was not denied due process on the basis that the prosecution failed to fully and accurately disclose the nature of the cooperation and benefit received by Dean Ciccone and Matthew Moody.**

Best next advances two claims of alleged *Brady* violations. *Brady v. Maryland*, 373 U.S. 83 (1963). First, Best claims that the Government did not disclose impeachment evidence about Dean Ciccone, who testified about his complicity with Best to pass fraudulent prescriptions. Second, Best contends that the Government should have disclosed that Matthew Moody, who was not called as a witness at trial, minimized his own involvement in drug trafficking and stated

that Best sold him Opana on the night of the overdose death.  Both of these *Brady* claims lack

merit.

In order to establish a violation of Best's due process rights under *Brady*, Best has the

burden to establish three elements.  First, Best must demonstrate that the evidence was favorable

to his defense, in that it was exculpatory or impeaching.  Second, that the Government must have

suppressed the evidence by failing to provide it to the defense.  And third, the evidence must

have been material, meaning that prejudice resulted from the suppression.  *Dennis v. Sec'y,*

*Pennsylvania Dep't of Corr.,* 834 F.3d 263, 284 (3d Cir. 2016).  Because Best did not raise these

claims at trial or on direct appeal, they are procedurally defaulted, and in order to proceed, he

must show both cause and prejudice.  *United States v. Pelullo*, 399 F.3d 197, 221 (3d Cir. 2005).

The Government aptly recounts the following testimony which is necessary in order to review

this claim:

> Dean Ciccone testified that he sold pills to Best, bought pills from Best,
> and that he passed a forged prescription provided by Best. ECF No. 435 at 29-
> 30. In December 2011, Ciccone attempted to pass a forged prescription that
> was unrelated to Best's conspiracy. Id. at 24-25; ECF No. 432 at 153-54. The
> pharmacy reported the forged prescription and on the request of the DEA, the
> Cranberry Township Police were first on the scene. ECF No. 432 at 153. The
> Cranberry police detained Ciccone. Id.
>
> On the first day of trial, April 1, 2014—three days before Ciccone's
> testimony—DEA Special Agent Vijay Nemani testified that Dean Ciccone
> "agreed to work with the Cranberry police and then provide information to us
> as well." ECF No. 432 at 155. "[H]e agreed to, with police, provide
> information and assist us with our investigation as well as Cranberry police
> primarily because they were the ones that arrested—were detaining him
> relative to that prescription." Id.
>
> Ciccone told the DEA about Best's forged prescription scheme and
> admitted to passing one of the prescriptions himself, which the DEA had not
> known about. Id. Ciccone himself testified that he began doing undercover
> work for the Cranberry police in exchange for them dropping charges related
> to the forged prescription. ECF No. 435 at 25. Specifically, Ciccone made a
> controlled buy from someone other than (and unrelated to) Best and gave
> information about someone who was selling drugs in exchange for the
> Cranberry police dropping charges for the forged prescription. Id. at 48-49. As

> defense counsel's cross-examination made clear, Ciccone began working for
> the DEA after the Cranberry police dropped charges against him, although he
> admitted confusion about whether the DEA was also charging him. Id. at 50-
> 52. He conducted two unpaid controlled purchase of drugs from Best for the
> DEA, which he testified about at trial. Id. at 26-27. He earned a total of $500
> from the DEA for his undercover work. Id.
>
> He first purchased three Opanas from Best on April 18, 2013, and he
> then purchased six Roxicets from Best on April 30, 2013. Id. at 33-38. Ciccone
> admitted that at the second controlled buy, which was videotaped, he bought a
> seventh Roxicet on credit and ingested it off-camera. Id. at 37-38. He hid this
> fact from the DEA until the morning of trial. Id. at 38. Ciccone also testified
> about the victim of the overdose death of which Best was acquitted. Id. at 40-
> 46.

Doc. 489 at pgs. 20-21.

Best contends that the Government violated both *Brad*y and the Jencks Act by failing to

disclose that Ciccone worked with the Cranberry Township police as well as the DEA. In the

alternative, Best argues that if Ciccone did not cooperate with the Cranberry police, the

Government violated Best's due process rights by failing to correct Ciccone's false testimony.

First, Best's argument in this regard fails because the evidence of Ciccone's cooperation

with the Cranberry police was not favorable to Best. The Cranberry police dropped charges

against Ciccone before he conducted the controlled buys for the DEA. Moreover, Ciccone

himself testified about his cooperation with the Cranberry police, leaving little argument about

how Best might have further employed this information to impeach Ciccone.

Second, as to suppression, Best cannot meet his burden to demonstrate that the evidence

was in fact withheld because Special Agent Nimay provided testimony about Ciccone's

cooperation with the Cranberry police three days prior to Ciccone's testimony, and Ciccone

testified about it on direct examination. *See United States v. Higgs*, 713 F.2d 39, 44 (3d Cir.

1983) (A prosecutor fulfills his duty to disclose potential impeachment information when it is

disclosed on the day that the witness testifies).

Third, Best cannot show materiality/prejudice in that there is a reasonable probability that the allegedly withheld evidence would have impacted the outcome of his trial. Simply put, there is no reasonable probability that impeachment of Ciccone's testimony would have affected the outcome of the trial.[8]

Best next claims that Matthew Moody minimized his involvement in drug trafficking and was not truthful about purchasing Opana from Best on the night of the overdose death. Assuming that Best's portrayal of Moody's statement to law enforcement was accurate, Best cannot demonstrate that the statements were, in fact, favorable or material, because Moody's minimization of his own role in the drug trafficking was irrelevant to Best's guilt. In any event, Moody never testified at trial, and therefore his statements did not qualify as impeachment material. Moreover, while Best contends that disclosure of Moody's statements would have allowed him "to fully explore the manner and extent to which Moody's inaccurate and dishonest statements tainted the investigation and trial," this Court recounts that Best was found not guilty on the overdose charge, so that there can be no showing of materiality/prejudice.

**Ground Five: Best's counsel was not ineffective because there is no credible evidence that counsel slept through Amanda Feltner's testimony or any other part of the trial.**

As set forth above, in order for an ineffectiveness claim to be successful, a petitioner must usually prove the prejudice prong of *Strickland*. However, under certain circumstances, such as when a defendant is "denied counsel as a critical stage of his trial," he can show that his

---

[8] To the extent Best attempts to allege that the Jencks Act was violated, the Court is mindful that the Jencks Act requires that after a witness called by the Government on direct examination has testified, the Court, on motion by Defendant, shall order the Government to product any statement of the witness in possession of the Government. Ciccone did not make any written statement in reference to his cooperation; accordingly, there is no claim on that basis.

Sixth Amendment rights were violated such that prejudice is presumed. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Although the United States Court of Appeals for the Third Circuit has not directly addressed when sleeping by counsel during trial equates to ineffectiveness of counsel, such that prejudice is presumed, other Courts that have considered this issue require that counsel sleep through a "substantial portion" of trial such that prejudice is presumed. *See Muniz v. Smith*, 647 F.3d 619 (6th Cir. 2011); *Javor v. United States*, 724 F.2d 831, 834 (9th Cir. 1984); *United States v. Ragin*, 820 F.3d 609, 612 (4th Cir. 2016); *Burdine v. Johnson*, 262 F.3d 336, 338-39 (5th Cir. 2001); *Tippins v. Walker*, 77 F.3d 682, 685 (2d Cir. 1996).

At the outset, the Court notes that it presided over the entire trial of this matter, and paid close attention to the testimony throughout, and at no point did the Court observe that defense counsel was asleep, despite an excellent sight-line to defense counsel's table. Further, the testimony of MedFast pharmacy technician, Amanda Feltner, and the complained of failure to cross-examine her, did not constitute a "substantial portion," of the trial such that the prejudice prong is presumed.[9] Ms. Feltner was a relatively neutral witness as she had no direct knowledge of Best's involvement either in drug trafficking or committing the burglaries, and her testimony was akin to a corroboration of the testimony of Gagianas. Moreover, there was little to gain from cross-examining her, especially given that Best admitted to the charged burglaries and that Gagianas was his source of supply.

In Best's affidavit, he makes vague and generalized allegations that counsel slept "several" times and that an unnamed juror heard that other jurors saw counsel sleeping, do

---

[9] Contrast *United States v. Nassida*, 2017 WL 1684299 (W.D. Pa. May 1, 2017), where Judge Ambrose found that attorney Levenson was asleep during a substantial portion of the trial, and prejudice was presumed, after Petitioner proved facts that counsel was observed to be asleep on 20 occasions during the trial.

nothing to advance Best's claim that counsel slept during a "substantial portion" of the trial. Doc. 480-1. The trial of this matter included the presentation of 32 Government witnesses, and the record establishes that defense counsel cross-examined 28 of those witnesses. Additionally, it is important to note that Best himself testified and admitted to all of the crimes charged except for the brandishment and the overdose death, and he was found not guilty on the latter charge. Accordingly, since the significance of the evidence is a factor in determining whether counsel slept through a substantial portion of the trial, the Court finds that Best totally has failed to show that counsel slept during any portion, much less a substantial portion, of the trial such that prejudice under *Strickland* is presumed.

Therefore, Best cannot demonstrate any prejudice in this case, because he cannot show the outcome of the trial would have been altered, since Best's own testimony established all of the factual predicates for all but two of the crimes charged - - and all but one of the convictions returned.

**Ground Six: The admission of Rule 404(b) evidence against Best does not show that trial counsel was ineffective.**

Best claims that trial counsel was ineffective on the basis that he failed to object to the introduction of Rule 404(b) evidence that Best had planned to: flee to Mexico; rob another pharmacy, when he figured out that he was the subject of investigation by the DEA; and, that he gave two Opana pills to Kyle Hochevar in 2001.

After the trial of this matter, the United States Court of Appeals for the Third Circuit described Federal Rule of Evidence 404(b) to be a "rule of general exclusion," meaning that other-bad act evidence is not admissible unless it serves a proper purpose. *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).

As for the evidence that Best had planned to flee to Mexico, even had counsel objected, the general state of the law in the United States Court of Appeals for the Third Circuit is that post-arrest flight is admissible as evidence of consciousness of guilt under Rule 404(b). *United States v. Green*, 25 F.3d 206, 210 (3d Cir. 1994); *United States v. Pungitore*, 910 F.2d 1084, 1151 (3d Cir. 1990); *United States v. Le*vy, 865 F.2d 551, 558 (3d Cir. 1989). Similarly, evidence that Best wanted to rob another pharmacy in order to obtain money for his escape was admissible to show that he developed a plan, and therefore was admissible. Nonetheless, Best cannot come close to showing prejudice in that it affected the outcome of the trial. After all, Best admitted to robbing one pharmacy, so any prejudicial impact that he was planning to rob another would be miniscule.

Finally, with respect to Best's challenge that his counsel's failure to object to testimony that he gave two Opana pills to Kyle Hochevar in 2011, this argument is similarly unavailing. While trial counsel did not object to this testimony, or request a limiting instruction, when Hochevar testified that he overdosed after taking the Opana pills, trial counsel did lodge an objection to that evidence. Best suffered no prejudice as a result of the admission of this evidence, and any prejudice that resulted from the absence of a limiting instruction regarding the overdose would have inured to the overdose count, on which Best was found not guilty. As the Government emphasizes, and this Court agrees, any possible prejudice from the evidence that Best gave away two Opanas is dwarfed by the evidence of Best distributing large quantities of drugs, and his admission to the drug trafficking counts.

**Ground Seven:  Neither trial counsel nor appellate counsel were ineffective for not "recommending" a guilty plea, and for not raising the claims set forth in this Motion to Vacate Sentence.**

Best contends that his trial counsel should have recommended that he plead guilty to the drug trafficking offenses so that he could obtain a sentencing reduction for acceptance of responsibility.  Best argues that counsel was ineffective for not "recommend[ing] that Mr. Best enter guilty pleas to the remaining drug trafficking charges." Doc. 480 at p. 36.

As the Government aptly points out, in order to obtain an evidentiary hearing a Petitioner must "raise[] sufficient allegations that his counsel's advice in helping to make that decision was so insufficient that it undermined [the defendant's] ability to make an intelligent decision about" plea decisions.  *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005).  In *Booth*, unlike the present situation, trial counsel had not advised the Petitioner that he could have entered an open plea to all counts of his indictment, in order to earn a reduction in his offense level for acceptance of responsibility.  Here, Best does not contend that trial counsel failed to inform him of the possibility of a plea to certain charges, but instead only that he did not "recommend" that Best do so.  Additionally, and importantly, Best does not state that he would have entered a plea of guilty to *all* counts, wherein an acceptance of responsibility reduction would have been more likely.  Instead, Best claims that he would have entered a guilty plea only as to certain charges, which exponentially decreased the likelihood that this Court would have exercised its discretion to apply a reduction for acceptance of responsibility, since a lengthy and costly trial would have still ensued.   (See doc. 429 on which the Court denied sentencing reduction on basis of acceptance of responsibility.) Finally, as the Government emphasizes and this Court agrees, the decision not to enter a partial open plea on the chance that this Court would have granted credit

for acceptance of responsibility was a tactical strategy, in that counsel hoped that the jury would have been more likely to believe Best when he denied the gun and overdose charges, since he admitted the other charges.

Finally, appellate counsel was not ineffective on appeal, because for the same reasons that Best has not demonstrated prejudice on any of the claims herein, he similarly would not have been able to establish the prejudice necessary to prevail on plain error on appeal. Simply put, appellate counsel was not ineffective for failing to raise meritless claims on appeal.

## VII. Conclusion

In the instant motion, Best has attempted to raise numerous arguments in support of his ineffectiveness claims under the Sixth Amendment and an argument for violation of his due process rights under the Fourteenth Amendment. While at first blush, the nature of the more salacious allegations regarding Best's trial counsel representing a co-defendant, and allegedly being asleep during trial might appear to be notable, after peeling away these claims to their cores, the claims of actual conflict fade, and the sleeping allegations similarly do not pass muster under *Strickland*.

This Court has found that in every ineffective assistance of counsel claim advanced by Best, as well as the alleged due process violation, the key component of prejudice is lacking. After all, Best testified and essentially admitted his guilt to all but two charges during the trial of this matter. Best's trial counsel was successful in gaining an acquittal on one of the two charges. Perhaps in hindsight, the trial strategy of Best admitting to the majority of the charges in an attempt to gain credibility on the others did not necessarily gain traction. Given the multitude of charges against Best and the relative unlikelihood that any reduction in culpability would have occurred because the trial would have nonetheless occurred (see doc. 429 Tentative

Findings and Rulings where Court declined to give three-point reduction), this Court cannot find that trial counsel's strategy was unreasonable based upon the prevailing norms of the legal profession. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996).

For all of these reasons, Best's Motion to Vacate Sentence will be DENIED. An appropriate Order follows.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge